UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DAVID BENTLEY, CECIL MCNEIL, DEVON HALL, KEON PERSON, KUWAND CARPENTER, LEONARD ODELL HINES JR., and all others similarly situated,

    Plaintiff,

v.

LECOM COMMUNICATIONS, INC., and LECOM, INC., collectively d/b/a "LECOM"

    Defendants

Case No. _____

**COLLECTIVE ACTION COMPLAINT**

**I.**    **INTRODUCTION**

1. This collective action is brought by Plaintiffs David Bentley, Cecil McNeil, Devon Hall, Keon Person, Kuwand Carpenter, and Leonard Odell Hines Jr., who perform or have performed telecommunications installation services in residences and businesses for Defendants LeCom Communications, Inc., and

LeCom Inc., collectively d/b/a "LeCom" in the state of Michigan and who are classified by LeCom as independent contractors.[1]

2. LeCom contracts with Comcast, a cable company, to perform telecommunication installations and repair services for Comcast's customers. LeCom controls the manner in which these services are performed, and LeCom benefits from the performance of these services. The individuals who perform these services, on whose behalf this collective and class action is brought, are improperly classified as independent contractors and are thus denied the protections of state and federal wage and hour laws.

3. LeCom has violated the FLSA by failing to pay these individuals time and one-half their regular rate for hours worked in excess of 40 hours per week.

4. The Plaintiffs bring their FLSA claims on behalf of a class of similarly situated individuals who have performed telecommunications installation services as "independent contractors" for LeCom throughout the State of Michigan

---

[1] A related collective FLSA action is currently pending before this Court which asserts the same overtime claims for other LeCom technicians who were misclassified as independent contractors in violation of the FLSA. See Benion et al. v. LeCom Communications, Inc. and LeCom, Inc., No. 2:15-cv-14367 (E.D. Mich.) (Lawson, J.). The named Plaintiffs in this action mailed opt-in forms to plaintiffs' counsel in that case shortly after the Court's September 2, 2016 deadline for filing opt-in forms. Defendants objected to the filing of any late opt-in forms in Benion, and therefore Plaintiffs now file this action to preserve the FLSA rights for late filers. Consequently, the opt-in forms filed in conjunction with this complaint are the forms Plaintiffs signed for the Benion action, with updated opt-in forms tailored for this specific action to be filed in their place shortly.

and who did not opt-in to <u>Benion</u>, No. 15-14367. Similarly situated individuals may also choose to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

## II. **JURISDICTION AND VENUE**

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiffs have brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.

6. Venue is proper in this Court because the events giving rise to this action took place with the district where Defendants do business, maintain a corporate presence, and have substantial contacts.

## III. **PARTIES.**

7. Plaintiff David Bentley is an adult resident of Redford, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" from May 2013 to November 2013. Plaintiff Bentley reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

8. Plaintiff Cecil McNeil is an adult resident of Warren, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" from June 2014 to February

2016.  Plaintiff McNeil reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

9. Plaintiff Devon Hall is an adult resident of Detroit, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" from August 2015 to July 2016.  Plaintiff Hall reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

10. Plaintiff Keon Person is an adult resident of Detroit, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" after October 2013.  Plaintiff Person reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

11. Plaintiff Kuwand Carpenter is an adult resident of Rochester Hills, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" from 2012 to 2014.  Plaintiff Carpenter reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

12. Plaintiff Leonard Odell Hines Jr. is an adult resident of Eastpointe, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" from 2012 to 2014.

Plaintiff Hines reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

13. Defendants LeCom Telecommunications, Inc. and LeCom Inc. are companies having a principal place of business in Detroit, Michigan, out of which they provide telecommunications services to businesses and individuals, and serve as a subcontractor for the national cable service company Comcast.

14. On information and belief, LeCom relies on the cable services company Comcast, for the majority of its cable installation business in Michigan, and hires individuals whose sole job responsibilities are to install and repair cable in businesses and residences on behalf of LeCom's customers. LeCom classifies some of these cable installers as employees, and others, like the Plaintiffs as "independent contractors." However, all cable installers perform the same type of work under LeCom's control and direction regardless of how LeCom classifies them.

## IV. STATEMENT OF FACTS

15. Defendant LeCom hires individuals, including the Plaintiffs and others similarly situated, to perform cable installation services in Michigan for LeCom's customers, as so-called "independent contractors."

16. To be hired, LeCom requires Plaintiffs and other individuals to contract with LeCom through one of five specific subcontractor companies at

LeCom's direction. However, in reality it is LeCom that is employing, assigning work to, and directing each "independent contractor" cable installer (hereinafter referred to as "technician") in the performance of the assigned work, regardless of which subcontractor LeCom has purported to hire each technician through.

17. Although LeCom classifies these technicians as "independent contractors," the nature of the services they perform, and the manner in which they perform these services, make it clear that they are actually employees who are economically dependent upon LeCom for their livelihood.

18. LeCom required the Plaintiffs and other similarly situated technicians to work six days each week for LeCom, unless formal requests were made to LeCom.

19. Plaintiffs and other technicians cannot take any time off or work fewer than six days in a week without prior approval from LeCom.

20. LeCom supervisors organize the company's daily list of job assignments into routes for each technician, and LeCom requires the technicians to report to its office every workday morning at approximately 7:00 a.m., to receive a route.

21. Each route consists of a collection of telecommunication installation assignments at residences and businesses, and some routes require technicians to drive longer distances than other routes. Since LeCom pays its technicians by the

job, the longer distance routes are less favorable. However, LeCom alone decides which technician is assigned which route, so technicians have no choice about which job assignments they work each day.

22. LeCom also determines the order in which the technicians perform the job assignments in their route each day, and LeCom provides specific time windows for when technicians must perform each assignment in the route. Technicians are not allowed to deviate from the job order or time windows given by LeCom without LeCom's prior approval.

23. At some point in time, LeCom started sending job assignments directly to the technicians via company-issued smart phones on a job-by-job basis, so that when a technician completes one job, the next job is automatically sent to that technician's phone. However, just like under the previous system set forth above, technicians are still required to report at LeCom's office each morning at 7:00 a.m., technicians still have no control over which assignments they are given, and technicians still cannot refuse to accept any assigned jobs.

24. Technicians who wish to reject a job assignment must ask a LeCom supervisor for permission, but LeCom has the authority to deny permission for any reason.

25. After technicians complete their assigned routes each day, LeCom requires each technician to call LeCom's office and acquire a "clear code" before

they are allowed to leave the field.  LeCom only provides technicians with a clear code if LeCom has no additional job assignments for the technician that day; if LeCom orders a technician to perform additional job assignments, the technician is required to do so or risk suspension or termination at LeCom's discretion.  In addition, LeCom requires all of its technicians to return to LeCom's office to return equipment at the end of each shift.

26. As a result of LeCom's requirement that its technicians work six days a week and accept all routes and additional job assignments that LeCom assigns, the technicians regularly work well over forty hours each week, and are unable to find time to perform the same type of work for any other entities besides LeCom.  Moreover, even if the technicians were able to find time to work for others, LeCom prohibits its technicians from performing work for anyone other than LeCom as a matter of policy.

27. Plaintiff Bentley regularly worked six days each week for LeCom, totaling well over 70 hours each week, from approximately 7:00 or 7:30 a.m. when he was required to report to LeCom's office, and ending as late as 8:00 p.m. or 9:00 p.m. at the LeCom terminal where he was required to report after his route and obtain LeCom's permission to go home.

28. Likewise, Plaintiffs McNeil, Hall, Person, Carpenter, and Hines regularly worked six days over 40 hours each week for LeCom.

29. However, LeCom did not pay Plaintiffs or its other technicians any overtime compensation for hours worked in excess of forty each week.

30. LeCom does not require technicians to have prior experience performing telecommunication installation work, and indeed LeCom has hired individuals to perform such work as "independent contractors" with no prior experience. LeCom requires these individuals to ride along with another technician to learn on the job.

31. In addition to controlling the work schedules, routes, and order of job assignments for each technician, LeCom also directly supervises the manner in which the technicians complete their assigned work.

32. Technicians regularly receive phone calls from LeCom employees throughout the day regarding the technicians' whereabouts and job performance, and to assign new jobs.

33. LeCom controls the uniform and appearance of its technicians. All technicians must wear a shirt bearing Comcast's logo, and are prohibited from wearing a hat unless it is one that the technician purchased from LeCom bearing LeCom's logo. LeCom also requires its technicians to wear a badge with LeCom's logo on it while they are working.

34. LeCom prohibits the technicians from wearing any clothing or hat that bears any other logos besides those of Comcast or LeCom.

35. Once each week, LeCom managers conduct mandatory morning meetings in which LeCom supervisors discuss the technicians' work performance, including job completion statistics as well as specific examples from the past week of work that the technicians did correctly or incorrectly in LeCom's opinion. LeCom threatens to suspend technicians if they fail to report for a mandatory weekly meeting.

36. LeCom also writes-up any technician who is found to not meet LeCom's detailed job performance specifications. For example, LeCom requires technicians to use specific types of fittings and to record certain codes on specific colors of tape at various types of job installations, and failure to comply with these detailed specifications results in disciplinary paperwork in the personnel file that LeCom maintains for each technician.

37. LeCom also controls the daily conduct of technicians through the use of backcharges, by unilaterally imposing and withholding of money from the technician's wages. Technicians have no means of challenging the backcharges and other deductions.

38. For example, LeCom requires technicians to return to job sites if the customer reports a signal loss, even if the signal was perfect when the technician originally left the job site. If a technician does not return to a previous job site to fix a reported issue, LeCom will penalize the technician by refusing to pay any

money to the technician, even where the technician performed extensive work at the job site. LeCom also unilaterally deducts money from the technicians' wages if LeCom believes (correctly or incorrectly) that the technician lost equipment that LeCom issued to the technician. In addition, even after LeCom pays a technician for completing a job, if Comcast decides that the job was billed incorrectly and resulted in an overpayment, LeCom retroactively backcharges the difference from the technicians' wages. Technicians are not able to challenge LeCom's decision to withhold their pay. On information and belief, LeCom uses the improperly withheld wages to compensate Comcast and for other purposes.

39. LeCom has the authority to terminate any technician at any time, and for any reason (or no reason at all), including for failure to accept job assignments from LeCom, failure to report to work six days each week, and failure to complete all job assignments in the manner prescribed by LeCom.

40. LeCom's warehouse provides all of the cables, boxes, fittings, and other similar equipment that its technicians need to perform cable installation and repair work for LeCom's customers.

41. The vehicles used by the technicians in performing services for LeCom all weigh less than 10,001 pounds (GVWR).

# COUNT I
## (Violation of Fair Labor Standards Act (FLSA))

42. Defendant's knowing and willful failure to properly pay time-and-a-half for hours worked more than forty (40) in a week to Plaintiffs and other similarly situated individuals described above performing telecommunications installation services based on their misclassification as "independent contractors" violates the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Permission for individuals throughout the state of Michigan, who perform or have performed telecommunications installation services for LeCom, are classified as independent contractors, have not been paid overtime for hours greater than forty (40) worked in a week, and who did not opt-in to Benion et al., No. 15-14367, to opt-in to this action, pursuant to § 216(b) of the FLSA;

2. All damages to which the Plaintiffs and class members may be entitled;

3. Liquidated and multiple damages as allowed by law, including double damages for the FLSA claim;

4. An injunction ordering Defendant to cease its violations of the law as described here;

5. Attorneys' fees and costs; and

6. Any other relief to which the plaintiffs may be entitled.

Respectfully submitted,
DAVID BENTLEY, CECIL MCNEIL,
DEVON HALL, KEON PERSON,
KUWAND CARPENTER, LEONARD
ODELL HINES JR., and all others
similarly situated,

By their attorneys,

 /s/ Harold L. Lichten
Harold L. Lichten, BBO # 549689
Peter M. Delano, BBO # 685079
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 - 5800

David M. Blanchard (P 67190)
BLANCHARD & WALKER, PLLC
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313

Dated: October 12, 2016